UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER H., | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )    No. 1:17-cv-00246-JAW |
| | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|     *Defendant* | ) |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) erred in assessing his standing, walking, hearing, and vision limitations in determining his residual functional capacity ("RFC"), (ii) failed to apply the so-called "borderline age rule" to determine whether he was disabled pursuant to Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid"), and (iii) failed to consider a closed period of disability. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 3-14. I agree that the ALJ erred in determining the plaintiff's standing/walking abilities and that this error undermined his reliance on the testimony of a vocational expert predicated on the faulty RFC

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

determination. Accordingly, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 135; that he had the severe impairments of status post severed right anterior cruciate ligament ("ACL"), status post right ACL knee surgery, and vision loss in the left eye, Finding 3, *id*.; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he no longer had the ability to climb ladders, ropes, or scaffolds or kneel, but had the ability to climb ramps or stairs, crawl, stoop, and crouch occasionally and had limited depth perception on his left side because he did not have vision in his left eye, Finding 5, *id*. at 136-37; that, considering his age (47 years old, defined as a younger individual, on his alleged disability onset date, October 2, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 140; and that he, therefore, had not been disabled from October 2, 2013, through the date of the decision, April 1, 2016, Finding 11, *id*. at 141. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The ALJ found that the plaintiff was capable of light work, *see* Finding 5, Record at 136, "the full range" of which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,]" Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 29. The plaintiff contends that this finding is unsupported by substantial evidence. *See* Statement of Errors at 4-7. I agree.

The record contains physical RFC assessments by four medical experts: those of treating orthopedic surgeon Stephen Thompson, M.D., dated January 21, 2014, *see* Record at 345-48, agency examining consultant David Axelman, M.D., dated April 22, 2014, *see id.* at 380-84, and agency nonexamining consultants Donald Trumbull, M.D., dated May 13, 2014, *see* Record at 82-85, and Richard T. Chamberlin, M.D., dated October 16, 2014, *see id.* at 108-10.

As the plaintiff observes, *see* Statement of Errors at 5, none of those medical experts deemed him capable of standing or walking for more than three hours in an eight-hour workday, *see* Record at 345 (per Dr. Thompson, plaintiff could stand or walk for less than two hours), 383 (per Dr. Axelman, plaintiff could stand for up to two hours and walk for about a half hour), 83

3

& 108 (per Drs. Trumbull and Chamberlin, plaintiff could stand and/or walk with normal breaks for a total of three hours).

However, the ALJ gave those opinions little or partial weight, explaining that they were inconsistent with the plaintiff's testimony at hearing and "did not account for the drastic improvement in the [plaintiff]'s right knee status post right knee arthroscopy." *Id*. at 139-40. The right knee arthroscopy to which the ALJ referred, performed in February 2015, constituted the second and final stage of knee reconstruction surgery after an initial surgery to address a workplace-related right knee injury in November 2013. *See id*. at 138.[2]

The ALJ elaborated that he deemed the plaintiff's "allegations of pain and his physical restrictions credible[,]" including his testimony that he "has little difficulty walking[.]" *Id*. at 138. He added that he gave partial weight to the Axelman opinion "because the [plaintiff] has the ability to stand longer than two-hours [sic] because he testified at the hearing that he does not like sitting around for very long during a normal day." *Id*. at 139.

The plaintiff contends that, because the ALJ rejected all medical expert opinion of evidence in determining his ability to stand and walk, he necessarily impermissibly substituted his own lay judgment, requiring remand. *See* Statement of Errors at 5-7; *see also, e.g.*, Gerry v. Berryhill, No. 1:16-cv-00351-DBH, 2017 WL 2894126, at *6 (D. Me. July 7, 2017) (rec. dec., *aff'd* July 25, 2017) ("While the First Circuit does permit an [ALJ] to pick and choose among physicians' findings and opinions, it does not permit the crafting of an RFC based on the raw medical evidence of record unless common-sense judgments about functional capacity can be made.") (citation and internal quotation marks omitted).

---

[2] The plaintiff had previously undergone ACL and meniscus reconstructive surgeries on his right knee following a workplace injury in 2010, *see* Record at 138, predating his alleged October 2, 2013, onset date of disability, *see id*. at 133.

The defendant counters that the ALJ merely resolved a conflict in the evidence, as he was tasked to do, by choosing to credit the plaintiff's own statements over the experts' opinions. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 3-5. She adds that, in any event, he made a permissible common-sense judgment about the plaintiff's capacity to stand and walk based on "objective findings that included . . . full range of motion and only mild tenderness and stiffness in his right knee[,]" "satisfactory surgical intervention," and "limitations to avoid only 'extreme activity' and pivoting and twisting activity." *Id*. at 5-6 (quoting Record at 138). Finally, she notes that the ALJ pointed out that the experts' opinions all predated much of that medical evidence. *See id*. at 6.

As the plaintiff's counsel rejoined at oral argument, however, the ALJ's reliance on his client's vague testimony is misplaced. In response to questions by the ALJ, the plaintiff testified, in relevant part, as follows:

> Q  [S]ince 2013 has [your pain] dramatically changed? Sounds like the surgery helped you. How were you doing before you had the surgery? Not the last surgery.
>
> A  I guess I'm at a loss.
>
> ATTY:  I think in between the two surgeries. Is that what you mean Your Honor?
>
> ALJ:  Yeah. Yes.
>
> CLMT:  Between the two surgeries I didn't have any ligaments in the knee. So there was no stability at all and when they did the final surgery once they replaced the ligaments I found I was able to accomplish some muscle tone and stability to walk without a cast or a brace, or crutches or a brace. . . .
>
> Q  Just as far as your every day life I was going to ask you what a typical day is like for you now and how are you spending your time? Like what kind of things do you usually do?
>
> A  Really just not much to be honest with you. I go to my kids['] hockey games and kind of clean the dishes and stuff like that while my wife is working.

Q   Going back to 2014 how are you doing as far as getting around and being able to do things you needed to do?

A   I can walk around pretty good. I don't have a problem getting up, you know, walking. I don't know where else to go.

\*\*\*

Q   . . . So how do you do with sitting for a long time?

A   I don't normally try to sit for any length of time. I could do it.

*Id*. at 61-63.[3]

That the plaintiff could "walk around pretty good" and didn't "have a problem getting up, you know, walking[,]" *id*. at 62, and that he tried not "to sit for any length of time[,]" *id*. at 63, did not necessarily mean that he could stand for six hours.

In any event, even assuming *arguendo* that the ALJ reasonably could have inferred from the plaintiff's testimony, or as a matter of common-sense judgment based on the record as a whole, including objective medical findings, that he could walk or stand for six hours in an eight-hour workday, he pointedly made no such finding with respect to the period prior to the plaintiff's second knee surgery in February 2015.[4]

The ALJ explained that he had determined that the plaintiff "has the ability to perform a restricted range of light exertion based upon his hearing testimony that his knee has improved to a point where he can lift up to twenty-five pounds, has little difficulty walking, and has the ability to sit for at least two hours." *Id*. at 138. He added that he had given little or partial weight to the

---

[3] The ALJ's inquiry regarding how the plaintiff was doing in 2014 was phrased in the present tense, and the plaintiff answered in the present tense, suggesting that he was testifying as to his current condition. *See* Record at 62. The ALJ asked no follow-up question seeking clarification. *See id*. Ultimately, in summarizing the relevant portion of the plaintiff's testimony, the ALJ himself described it in the present tense. *See id*. at 137 ("Despite his alleged pain, the [plaintiff] stated that his right leg is improving daily. He alleged that he does not experience any difficulty walking.").
[4] Although the plaintiff raised this point in conjunction with his separate argument that the ALJ failed to consider a closed period of disability, *see* Statement of Errors at 13-14, it also bears on whether the ALJ's findings regarding the plaintiff's capacity to stand and walk are supported by substantial evidence.

medical experts' RFC opinions because they predated, and thus did not account for, what he described as the "drastic" or "great" improvement in the plaintiff's right knee "status post right knee arthroscopy," that is, "after . . . the second stage of his right knee reconstructive surgery." *Id*. at 139-40 (citation omitted).

Nevertheless, to focus on an improvement post-surgery necessarily begs the question of the plaintiff's condition pre-surgery, and the ALJ failed to address the latter. He, therefore, explicitly made no determination regarding the plaintiff's capacity to walk or stand for the period from his alleged onset date of disability, October 2, 2013, through at least February 2015, the date of his second reconstructive knee surgery. *See id*. at 138-40.[5] To that extent, his conclusion that "[t]he [plaintiff] ha[d] not been under a disability . . . from October 2, 2013, through the date of this decision[,]" Finding 11, *id.* at 141, was unsupported by substantial evidence.

Caselaw cited by the commissioner for the proposition that an ALJ may factor a claimant's testimony or statements into the determination of his or her RFC, including by discounting medical opinions on the basis of their inconsistency with such testimony or statements, *see* Opposition at 4-5, is distinguishable. In *Alberts v. Astrue*, Civil Action No. 11-11139-DJC, 2013 WL 1331110 (D. Mass. Mar. 29, 2013), the ALJ did not reject all medical expert opinions of record on the basis of inconsistency with a claimant's statements but, rather, discounted a treating physician's opinion in part on that basis. *See Alberts*, 2013 WL 1331110, at *7-9. And, in *Kenney v. Colvin*, No. 2:13-

---

[5] Earlier in his decision, the ALJ described the plaintiff's hearing testimony as "consistent with his past statements about his physical limitations[,]" pointing to a February 7, 2014, report in which "the [plaintiff] stated that he no longer had the ability to kneel, climb ladders, and walk up and down inclines[,]" "alleged vision loss in his left eye[,]" "stated that he has some difficulty bending, standing, and walking[,]" "stated that he experienced some difficulty getting dressed[,]" and "had no limitations driving a car." Record at 137-38 (citation omitted). However, he failed to acknowledge the obvious conflict between the plaintiff's hearing testimony that he did "not experience any difficulty walking" and his February 7, 2014, report that he had "some difficulty" standing and walking. *Id.*; *see also id*. at 285. Beyond that, he omitted mention of the fact that the plaintiff stated in the February 7, 2014, report that he was using crutches and a brace prescribed in November 2013. *See id.* at 286.

7

cv-296-GZS, 2014 WL 3548986 (D. Me. July 17, 2014), the ALJ made a supportable common-sense judgment of the claimant's RFC "relying in part on medical findings of record, in part on agency consultants' findings, and in part on the [claimant]'s own admissions." *Kenney*, 2014 WL 3548986, at *3. In this case, as discussed above, the ALJ's finding as to the plaintiff's ability to stand is unsupported by either expert medical opinion or the plaintiff's own testimony and, in any event, the ALJ made no findings concerning the plaintiff's standing and walking capacity during a significant portion of the period at issue.[6]

Because the ALJ relied on vocational expert testimony predicated on a determination of standing and walking capacity that is unsupported by substantial evidence insofar as it concerns the entirety of the period at issue, his reliance on the vocational expert's testimony to carry the commissioner's burden at Step 5 was misplaced, warranting remand. *See, e.g., Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

---

[6] Ironically, the commissioner's final argument in support of the ALJ's standing/walking determination cuts against it: that, "while it is true that in *January 2014*, Dr. Thompson limited [the] [p]laintiff to less than 2 hours of standing or walking because of knee instability, by *May 2015*, Dr. Thompson described [the] [p]laintiff as 'asymptomatic,' and a physical therapy discharge summary noted [that the] [p]laintiff had full and symmetrical range of motion and normal clinical strength grades in his right knee." Opposition at 6 (*comparing* Record at 345 *with id*. at 585) (emphasis in original).

8

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 23rd day of July, 2018.

                                              <u>/s/ John H. Rich III</u>
                                              John H. Rich III
                                              United States Magistrate Judge